# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**December 22, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**PAUL SCOTT,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-175**          (JCN: 2024009153)

**ACNR RESOURCES, INC.,**
**Employer Below, Respondent**

**and**

**PAUL SCOTT,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-208**          (JCN: 2024009153)

**ACNR RESOURCES, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

In these consolidated appeals, Petitioner Paul Scott appeals the April 1, 2025, order of the Workers' Compensation Board of Review ("Board"), which affirmed the claim administrator's order and held Mr. Scott failed to establish that his request for left hemiarthroplasty shoulder surgery was related to his compensable injury. Mr. Scott also appeals the April 16, 2025, order of the Board, which affirmed the claim administrator's order and held Mr. Scott failed to establish that he was entitled to temporary total disability ("TTD") benefits after August 28, 2024. In both cases, Respondent ACNR Resources, Inc. ("ACNR") filed a response, and Mr. Scott did not file a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds there is error in the Board's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1] Mr. Scott is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. ACNR is represented by Aimee M. Stern, Esq.

1

On October 31, 2023, Mr. Scott was working as a maintenance mechanic and electrician for ACNR when he tripped and fell while carrying items and landed on his left elbow. On November 5, 2023, Mr. Scott sought medical treatment at MedExpress, and he was diagnosed with a sprain of the left shoulder. Mr. Scott reported he experienced burning in the front of his left shoulder that radiated up into his neck after the fall and that his elbow did not hurt. An x-ray was performed and showed significant narrowing and degenerative spurring of the glenohumeral joint, including the glenoid margin and humerus. Mr. Scott was also referred for a left shoulder MRI. He filed a claim for workers' compensation benefits, and by order dated November 15, 2023, the claim administrator held his claim compensable for an unspecified strain of an unspecified shoulder joint.

On November 28, 2023, Mr. Scott underwent an MRI, which showed advanced glenohumeral osteoarthritis with small joint effusion containing multiple joint bodies and debris; severe rotator cuff tendinopathy, full-thickness, partial width tearing of the anterior insertional fibers of the supraspinatus; and no significant muscular atrophy. On December 4, 2023, Mr. Scott was evaluated by Lawrence Witzberger, PA-C, at Wheeling Hospital Orthopedic. Mr. Scott presented with complaints of left shoulder pain, limited and painful range of motion, and popping and grinding in the shoulder. P.A. Witzberger diagnosed Mr. Scott with osteoarthritis of the left shoulder and a traumatic tear of the left rotator cuff. It was noted that Mr. Scott's case was complicated by the level of arthritis in the shoulder, and he was referred to physical therapy.

On January 4, 2024, Mr. Scott was seen by Michael J. Rytel, M.D., for a second opinion regarding his left shoulder injury.[2] Dr. Rytel diagnosed primary osteoarthritis in the left shoulder and a traumatic complete tear of the left rotator cuff. Dr. Rytel reported that the osteoarthritis predated the work injury, but Mr. Scott denied experiencing any symptoms in his left shoulder prior to his fall at work. In order for Mr. Scott to continue working, Dr. Rytel opined that Mr. Scott would require optimal function and that a repair of the rotator cuff would likely be of no value without doing a shoulder arthroplasty at the same time. Dr. Rytel opined that the need for both surgeries would be related to Mr. Scott's work accident.

---

[2] ACNR submitted an operative report by Dr. Rytel dated May 6, 2016, concerning a right shoulder hemiarthroplasty performed on Mr. Scott. The post-operative diagnosis was right shoulder end-stage osteoarthritis with a supraspinatus tendon tear. Mr. Scott saw Dr. Rytel on December 8, 2016, after his right total shoulder surgery, and Mr. Scott reported he now considered his right shoulder to be his good shoulder.

At the request of the claim administrator, Mr. Scott underwent an independent medical evaluation ("IME") performed by Robert L. Waltrip, M.D., on March 11, 2024. Dr. Waltrip opined that Mr. Scott had an easily repairable left rotator cuff tear and was symptomatic both from the rotator cuff tear and the underlying severe glenohumeral arthritis. He noted it would be reasonable to repair the left rotator cuff and proceed with either a hemiarthroplasty or total shoulder replacement. Dr. Waltrip added that the need for rotator cuff repair and a hemiarthroplasty or total shoulder replacement with an anatomic prosthesis would be related, at least in part, to Mr. Scott's compensable injury. Dr. Waltrip also found that Mr. Scott had not reached maximum medical improvement ("MMI").

On April 1, 2024, Dr. Waltrip issued an addendum report stating a hemiarthroplasty or total shoulder replacement would be directed toward Mr. Scott's underlying severe glenohumeral arthritis and would not be related to the compensable injury. Dr. Waltrip noted that Mr. Scott had arthritis prior to his compensable injury and experienced preexisting, intermittent pain for which he was taking anti-inflammatory medication. Dr. Waltrip noted that an MRI of the left shoulder dated November 28, 2023, showed advanced arthritis with a small-to-moderate joint effusion and did not show a traumatic injury to the articular cartilage, fracture, or other structural changes to alter the natural history of the underlying arthritic condition. On April 10, 2024, the claim administrator authorized only a left shoulder rotator cuff repair and 28 sessions of physical therapy.

On April 17, 2024, Mr. Scott presented for a follow-up with Dr. Rytel. Because of Mr. Scott's left shoulder osteoarthritis, Dr. Rytel opined that an arthroplasty to include repair of the rotator cuff would provide Mr. Scott with the best outcome. Dr. Rytel noted Mr. Scott continued to have significant pain, especially when reaching or lifting away from the body, and indicated Mr. Scott would like to proceed with surgery. On May 1, 2024, Dr. Rytel performed a left shoulder arthroscopy that included an extensive debridement of the supraspinatus and subscapularis tendons, extensive labral debridement circumferentially, a bursectomy, and an intraarticular injection of corticosteroid. The postoperative diagnoses were a left shoulder partial thickness rotator cuff tear, extensive tearing of the labrum circumferentially, a partial subscapularis tear, and osteoarthritis with a large effusion. Dr. Rytel stated the glenohumeral articular surfaces showed eburnated bone devoid of articular cartilage. Dr. Rytel noted that he did not repair the tear because of the severity of the arthritis and noted he was concerned that the repair and the immobilization would cause further stiffness and exacerbate the osteoarthritis. Mr. Scott returned for a follow-up on May 9, 2024, and was advised that he would ultimately require a total shoulder arthroplasty.

On August 19, 2024, Dr. Waltrip performed a second IME and opined that Mr. Scott did not need any further care or treatment for his compensable injury. Dr. Waltrip stated that Mr. Scott's current symptoms were related to his unrelated preexisting severe left shoulder glenohumeral arthritis and that any further treatment would be unrelated to the compensable injury. Dr. Waltrip disagreed with Dr. Rytel's suggestion that the

compensable injury aggravated the pre-existing arthritis. Dr. Waltrip reported that Mr. Scott sustained no fracture, dislocation, or acute cartilage injury that could have aggravated the arthritis and opined that Mr. Scott would have required a left shoulder replacement even in the absence of the compensable injury.

On August 28, 2024, the claim administrator issued two orders. The first order denied Mr. Scott's request for hemiarthoplasty shoulder surgery based on the August 19, 2024, report of Dr. Waltrip. The second order stated Mr. Scott's TTD benefits would be closed in thirty days unless additional evidence was received because Dr. Waltrip's report dated August 19, 2024, placed Mr. Scott at MMI for the compensable injury. On October 7, 2024, the claim administrator held that Mr. Scott failed to submit additional evidence to substantiate the continuation of his TTD benefits and closed his claim. Mr. Scott protested the two orders to the Board.

Mr. Scott was deposed on November 4, 2024, and testified that his total shoulder replacement surgery was scheduled for December 20, 2024. Mr. Scott testified that he had no problems with his left shoulder, was able to perform his duties with relative ease, and had never previously received medical treatment for his left shoulder prior to his workplace injury. He further testified that the anti-inflammatory medication he was taking for a few years prior to the compensable injury, and which was referenced by Dr. Waltrip, was not related to his left shoulder, but instead was to treat his knees.

On April 1, 2025, the Board entered a decision affirming the claim administrator's order dated August 28, 2024, and held that Mr. Scott failed to establish that his request for hemiarthroplasty shoulder surgery was required to treat his compensable injury. Next, on April 16, 2025, the Board entered an order affirming the claim administrator's order dated October 7, 2024, and held Mr. Scott failed to establish that he was entitled to TTD benefits after August 28, 2024. It is from these orders that Mr. Scott now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;

4

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Scott asserts one assignment of error in each of his appeals. In the case related to his request for hemiarthroplasty shoulder surgery, Mr. Scott argues the Board was clearly wrong because Dr. Rytel is the treating physician, has provided a consistent opinion, and his opinion was supported by medical evidence. Mr. Scott argues that Dr. Waltrip's initial report opined that both the rotator cuff repair and the hemiarthroplasty were, in part, necessitated by his compensable injury. However, Dr. Waltrip quickly reversed his opinion and then disagreed with Dr. Rytel's recommendation. In the case related to TTD benefits, Mr. Scott argues the Board was clearly wrong because Dr. Rytel, as Mr. Scott's treating physician, had not released him to return to work and continued to state that Mr. Scott needs additional treatment. We will consolidate the consideration of these assignments of error for clarity. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (allowing the consolidation of related assignments of error).

The Supreme Court of Appeals of West Virginia ("SCAWV") held in Syllabus Point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), as follows:

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

The SCAWV clarified its position in Syllabus Point 5 of *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), and stated that

[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continually manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

5

Further, this Court held in *Blackhawk Mining v. Argabright*, 251 W. Va. 549, 552, 915 S.E.2d 7, 10 (W. Va. Ct. App. 2023)[3] that "*Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury." Further, in *Argabright*, this Court said that although a preexisting condition is not compensable, treatment of a "newly symptomatic disability is appropriate." *Id.* at 553, 915 S.E.2d at 11.

Upon review, we find the Board failed to reference *Gill*, *Moore*, or *Argabright* and failed to make a credibility determination between the findings of Drs. Rytel and Waltrip in its April 1, 2025, order. In this case, the Board was provided with medical opinions from both Dr. Rytel, who is Mr. Scott's surgeon and who determined that the rotator cuff tear could not be repaired without a hemiarthroplasty, and Dr. Waltrip, who is ACNR's expert witness. In its April 1, 2025, order, the Board found the requested hemiarthroplasty was treatment related to Mr. Scott's preexisting left shoulder arthritis, as was opined by Dr. Waltrip. On appeal, Mr. Scott argues the Board was clearly wrong in denying his request for surgery because Dr. Rytel was his treating physician and Mr. Scott had no symptoms or treatment for his osteoarthritis prior to the compensable injury. The Board failed to articulate why it sided with Dr. Waltrip's opinions and failed to make credibility determinations, which would allow this Court to resolve these disputes. The Board further failed to weigh the relevance, credibility, materiality and/or reliability of the evidence in the context of the issues presented.

In addition, the Board's April 1, 2025, order failed to discuss other important aspects of these appeals. It failed to analyze Dr. Rytel's post-surgery report stating that Mr. Scott's left shoulder tear could not be repaired due to the severe arthritis that was present, that Dr. Waltrip changed his initial opinion, and that Mr. Scott's deposition testimony stated the anti-inflammatory medication he was taking was related to his knees. The Board must analyze the relevant evidence submitted. Accordingly, we vacate the Board's April 1, 2025, and April 16, 2025,[4] orders, remand these matters to the Board for consideration of all the evidence in the record in accordance with *Gill*, *Moore,* and *Argabright*, and direct the Board to include sufficient analysis of the evidence in the record in its subsequent orders, including evidence submitted by all parties, to substantiate its findings.

---

[3] This Court's decision was affirmed by the SCAWV in *Argabright v. Blackhawk Mining, LLC*, No. 23-381, 2024 WL 3984505 (W. Va. Aug. 27, 2024) (memorandum decision).

[4] We vacate the Board's April 16, 2025, order related to TTD benefits because the determination of whether Mr. Scott has reached MMI and is no longer entitled to TTD benefits is dependent on whether Mr. Scott's left hemiarthroplasty shoulder surgery is determined to be in the course of treatment for his compensable injury.

Accordingly, the Board's April 1, 2025, and April 16, 2025, orders are vacated, and these cases are remanded to the Board for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** December 22, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White